**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**RYAN SPRINGS,**

**Plaintiff,**

**v.**

**JOHN DOE 1,**
**JOHN DOE 2,**
**JOHN DOE 3,**
**JOHN DOE 4,**
**SGT. MCKINSTRY,**
**JOHN DOE 5,**
**JOHN DOE 6,**
**C. BRUNS,**
**LT. LITTLE,**
**UNKNOWN JUSTICE COMMITTEE MEMBER,**
**WARDEN BARWICK,**
**ILLINOIS DEPARTMENT OF CORRECTIONS,**
**PINKNEYVILLE CORRECTIONAL CENTER,**
**ALEX COOLEY, and**
**CORIZON HORIZON,**

**Defendants.**

**Case No. 26-cv-01370-SPM**

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ryan Springs, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center (Pinckneyville), brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief

must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges the following: On August 27, 2026, while Plaintiff was leaving the dining hall, he was ordered by Sergeant McKinstry to dispose of an apple he had placed inside his pocket. (Doc. 1, p. 11). Plaintiff complied, and after he discarded the apple, McKinstry falsely "declared" a "staff assault" and directed Plaintiff to "cuff up." (*Id.*). Plaintiff asserts that neither he nor the apple ever touched McKinstry. (*Id.* at p. 12). McKinstry then escorted Plaintiff to segregation. (*Id.* at p. 11.).

On the way to segregation, Plaintiff asked McKinstry, "Is this really about a[n] apple?" (Doc. 1, p. 12). McKinstry responded by twisting the handcuffs causing Plaintiff pain, and McKinstry forced Plaintiff to walk abnormally. (*Id.*). McKinstry also called Plaintiff "Boy," told him he was stupid, and stated that Plaintiff would burn in segregation because of the hot temperatures in the cells. (*Id.*).

As McKinstry and Plaintiff entered the healthcare unit, McKinstry continued to twist the handcuffs and have Plaintiff walk abnormally, which caused Plaintiff to fall to the floor. (Doc. 1, p. 12). While Plaintiff was on the ground, McKinstry kneed Plaintiff in the back. (*Id.* at p. 13). McKinstry and Correctional Officers John Does 1, 2, 3, and 4 picked Plaintiff up and threw him into an interview room with a concrete floor. (*Id*). Plaintiff's head hit the floor, and the correctional officers began punching and hitting him. (*Id.*). McKinstry stood on Plaintiff's face and pulled out some of his hair. (*Id.*). Plaintiff was then handcuffed to a steel chair. (*Id.*). Plaintiff sustained bruises, marks, and welts to his face, body, legs, arms, and ankles. (*Id.*). He also incurred a serious head injury when his head hit the concrete floor. (*Id.*). Plaintiff has a huge bump, and he describes

his head as deformed. (*Id.*; Doc. 2, p. 5).

Following the assault, Plaintiff met with Arieyon Dellairo, a mental health provider. (Doc. 1, p. 14). Plaintiff explained to Dellairo that he had hit his head on the concrete floor and was assaulted by correctional officers. (*Id.* at p. 23). While Plaintiff was speaking with Dellairo, Nurse Alex Cooley entered the room. (*Id.* at p. 14). Cooley did not speak to Plaintiff and only wrote a few notes. (*Id.*). Cooley then left without giving Plaintiff an examination or any medical treatment, including medicine. (*Id.* at p. 14). Plaintiff asserts that Cooley should have sent him to the hospital or allowed him to see a doctor. (*Id.*). Because Cooley did not examine Plaintiff, he did not discover that Plaintiff's head was disfigured. (*Id.*). Plaintiff was then taken to 6 House and placed on crisis watch, where Internal Affairs photographed Plaintiff's injuries. (*Id.*).

The following day, August 28, 2026, Internal Affairs interviewed Plaintiff. (Doc. 1, p. 14). Before, during, and after the interview, Plaintiff requested protective custody because he was afraid that the correctional officers who assaulted him would harm him again, but his requests were denied. (*Id.*). Plaintiff also asked to see the video footage and explained that the footage would show he did nothing wrong. (*Id.*). Plaintiff was told that "Springfield" would handle the investigation. (*Id.*). He was not allowed to view the video footage, and he was not given a copy of the investigation report. (*Id.*). During the next few days, Plaintiff's wounds became infected. (*Id.*).

On September 1, 2026, Plaintiff was removed from crisis watch and placed in cell 5B32. (Doc. 1, p. 16). At the time, the heat index was over 100 degrees, and 5 House did not have electricity for the use of individual fans. (*Id.*). Plaintiff's cell was filthy, and he was not given cleaning supplies to clean his cell. (*Id.*). Plaintiff suffered physical, mental, and emotional stress from the poor living conditions. (*Id.*).

Also on September 1, 2026, Plaintiff was issued a disciplinary report. (Doc. 1, p. 16). In the report, McKinstry is listed as the reporting employee, and Bruns is listed as the hearing

investigator. (*Id.*). The shift review officer (John Doe 5) and reviewing officer (John Doe 6) are also listed, but their names are illegible. (*Id.*). A disciplinary hearing was conducted at Plaintiff's cell by Pinckneyville Justice Committee Chair Lieutenant Little and an Unknown Justice Committee Member John Doe 7.[1] (*Id.* at p. 18). During the hearing, Little explained to John Doe 7 that the assault with injury did not happen "with the apple" but that the assault with injury occurred when Plaintiff fell and McKinstry's knee "touched [Plaintiff]." (*Id.*). Little was biased and failed to review the video footage and the photographs of Plaintiff's injuries. (*Id.*). Little disregarded Plaintiff's version of the facts and only credited the eyewitness account of a correctional officer named Fleener. (*Id.*). Plaintiff was found guilty of the disciplinary report, and Warden Barwick concurred in the findings. (*Id.*).

## PRELIMINARY DISMISSALS

The Court dismisses the claims Plaintiff brings against IDOC and Pinckneyville Correctional Center. Neither entity is a "person" subject to suit for money damages under Section 1983, *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012), and a state agency cannot be sued for prospective injunctive relief in federal court. *See Quick v. Illinois Dep't of Fin. & Pro. Regul.*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. 2020) (collecting cases).

Plaintiff has also failed to state a claim against Corizon. (Doc. 1, p. 29). Private corporations such as Corizon have liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), if they perform a governmental function and, in doing so, injure the plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions). Plaintiff's assertions that the constitutionally inadequate medical care

[1] Plaintiff refers to this defendant as "Unknown Justice Committee Member" and "Unknown C/O." (Doc. 1, p. 1, 6, 18). For clarity, the Court will refer to this defendant as John Doe 7.

provided by Nurse Cooley was the result of a Corizon practice of improperly training staff and a culture of turning a blind eye to inmates with signs of trauma are conclusory and not supported by any facts in the Complaint. *See McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011) (a plaintiff must plead a sufficient factual basis for a Monell claim). Thus, he has failed to state a plausible claim that his poor treatment was the result of a widespread practice, policy or custom, and his Eighth Amendment claim against Corizon is dismissed.

Plaintiff's assertion that Corizon violated his constitutional rights by allowing security staff to be present during medical examinations does not amount to a constitutional violation so also does not state a claim. The Seventh Circuit has yet to recognize a constitutional right to medical privacy. *See Hunter v. Amin*, 583 F.3d 486, 489–90 (7th Cir. 2009) (finding that a policy requiring a jail officer to be present during psychiatrist examinations did not violate the plaintiff's constitutional rights). Furthermore, Corizon cannot be held liable under the provisions of Health Insurance Portability and Accountability Act (HIPAA). (Doc. 1, p. 29). There is no private right of action to enforce the provisions of HIPAA. S*ee Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019).

The Court dismisses Plaintiff's Eighth Amended claim for being housed in unconstitutional conditions while housed in cell 5B32, as the allegations concerning his cell conditions are not asserted against any named defendant. (Doc. 1, p. 26).

And finally, to the extent Plaintiff is seeking to sue McKinstry for failing to "call in a code via radio" and for personally escorting Plaintiff to segregation on August 27, 2026, contrary to policy, such claim fails. (Doc. 1, p. 11, 24). Violations of prison policy do not amount to a constitutional violation. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020).

## Discussion

Based on the allegations and Plaintiff's articulation of his claims in the Complaint, the

Court designates the following counts:

**Count 1:** Eighth Amendment claim for excessive force against McKinstry for twisting Plaintiff's handcuffs and forcing him to walk in a stress position while escorting him from the dining area on August 27, 2026.

**Count 2:** Eighth Amendment claim against McKinstry, John Doe 1, John Doe 2, John Doe 3, and John Doe 4 for the use of excessive force and/or failure to intervene after Plaintiff fell to the ground in the healthcare unit on August 27, 2026.

**Count 3:** Eighth Amendment claim against Nurse Cooley for failing to provide Plaintiff adequate medical care on August 27, 2026.

**Count 4:** Fourteenth Amendment claim against John Doe 5, John Doe 6, Bruns, Little, John Doe 7, and Barwick for punishing Plaintiff without due process of law.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard**.

**Counts 1 and 2**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S.Const., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Hudson v. McMillian,* 503 U.S.1, 6 (1992)).

Taking Plaintiff's allegations as true, on August 27, 2026, McKinstry forced Plaintiff to walk "abnormally" (Doc. 1, p. 12) as McKinstry escorted Plaintiff from the dining hall to an

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

interview room and continued to twist Plaintiff's handcuffs unnecessarily inflicting pain for no penological reason. All the while, McKinstry was insulting and threatening Plaintiff. These facts are enough to establish an Eighth Amendment claim for excessive force, and Count 1 will proceed against McKinstry.

Plaintiff's allegations that on August 27, 2026, Defendants McKinstry and John Does 1-4 were involved in physically assaulting him while he was restrained are also sufficient for Count 2 to proceed. *See Sanchez v. City of Chicago*, 700 F.3d 919, 925–26 (7th Cir. 2012). ("[I]n a Section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff…as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers.").

**Count 3**

An Eighth Amendment medical claim contains both an objective and a subjective component. To satisfy the objective component, a prisoner "must demonstrate that his medical condition is 'objectively, sufficiently serious.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). A medical condition is considered objectively serious if it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). As to the subjective component, the Seventh Circuit has held that a prison official acts with deliberate indifference when he "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 414 F.3d at 653. Neither "medical malpractice nor mere disagreement with a doctor's medical judgment" is sufficient to establish deliberate indifference. *Berry*, 604 F.3d at 441 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Est. of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)).

Assuming that Plaintiff's head injury was serious, Plaintiff has not pled facts which allow a plausible inference that Cooley acted with deliberate indifference. Generally, a single interaction with a prison employee is not enough to establish deliberate indifference absent extreme circumstances. *See e.g., Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect…cannot support a finding of deliberate indifference"). And notably, it is not entirely clear what Plaintiff communicated to Cooley about his injuries because he states that he was speaking to a mental health provider when Cooley entered the room, and he confirms that he chose to stop talking because he did not want to speak to medical staff with security staff around. (*See* Doc. 1, p. 33; Doc. 2, p. 4). Thus, as pled, Cooley's failure to exam Plaintiff's head during this one instance does not rise to the level of "intentional or criminally reckless," which is required for an Eighth Amendment violation. *Greeno*, 414 F.3d at 653. Count 3 is dismissed without prejudice.

**Count 4**

To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). The question is "whether a protected liberty interest exists, and if so, whether [Plaintiff] received adequate process to protect it." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

As a result of the false disciplinary ticket and deficient investigation and disciplinary proceedings, Plaintiff claims that he has been denied certain privileges such as access to the telephone and the ability to have visitors. (Doc. 1, p. 27, 30). He has been placed in segregation for a year and is no longer eligible for a transfer. (*Id.* at p. 30). Plaintiff also asserts that because he was found guilty of the conduct alleged in the disciplinary ticket, the guilty verdict caused him

"to loose time." (*Id.*). The Court construes this to mean that Plaintiff lost good time credits.

Plaintiff has pled facts implicating that he was deprived of liberty interests as a result of the disciplinary charges. Placement in segregation can amount to a deprivation of a liberty interest if the conditions imposed were a dramatic departure from basic conditions of prison life. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Additionally, the loss of good time credits also implicates a liberty interest. *Torres v. Brookman*, 155 F.4th 952, 956 (7th Cir. 2025). That being said, a plaintiff is precluded from bringing claims for damages if a judgment in favor of the plaintiff would necessarily imply the invalidity of conviction, sentence, or an administrative order "revoking good-time credits or equivalent sentence-shortening devices." *Moran v. Sondalle,* 218 F.3d 647, 650-51 (7th Cir. 2000) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)). *See also Morgan v. Schott*, 914 F.3d 1115, 1120 (7th Cir. 2019). This means that a plaintiff cannot bring a civil rights action for the reduction of his good time credits that occurred as a result of a faulty disciplinary ticket and hearing until after the disciplinary proceeding is overturned.

Here, Plaintiff has not alleged any facts from which the Court can infer that his good time credits were restored or the decision of the Justice Committee was vacated, so he cannot challenge the procedures relating to the disciplinary hearing under Section 1983 at this time. *See Powell v. Bowen*, No. 22-2460, 2023 WL 4636407, at *3 (7th Cir. July 20, 2023); *Alexander v. Rasmussen*, 725 F. App'x 418, 420 (7th Cir. 2018) (a prisoner may not challenge a prison disciplinary proceeding under Section 1983 if the disciplinary proceeding included the loss of good-time credits). Accordingly, Plaintiff has failed to state a due process claim associated with the punishment imposed as a result of constitutionally inadequate disciplinary proceedings. Count 4 is dismissed without prejudice.

## Motion for Emergency Injunctive Relief

Plaintiff has filed a motion seeking a Court order directing that he be taken to a hospital

for an MRI and that he be provided medication for his head injury. (Doc. 2, p. 5). Plaintiff also asks to be transferred from Pinckneyville to another facility. (*Id.*). He states he fears for his life, and he believes staff will kill him. (*Id.*).

In order to obtain emergency injunctive relief, either through a temporary restraining order or a preliminary injunction, a plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007).

To the extent Plaintiff seeks Court mandated medical care the Motion is **DENIED**. Because Plaintiff failed to plead facts establishing a viable Eighth Amendment deliberate indifference claim, it is impossible for Plaintiff to prove that he is likely to succeed on the merits of such a claim. Any emergency injunctive relief relating to medical care is therefore outside the scope of this litigation.

To the extent Plaintiff seeks a Court order transferring him to another institution the Motion is also **DENIED**. There is no evidence that Plaintiff is in immediate danger of harm. He claims that he "believes with all [his] heart they will kill [him]." (Doc. 2, p. 6). Plaintiff states that officers often misconstrue an inmate's frustrations for signs of aggression and "its that simple a person in confinement will loose the[ir] life." (*Id.*). But other than speculation about future danger, he does not articulate a specific threat to his safety. As the Seventh Circuit has stated, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020). *See also Mich. v. Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011) ("there must be more than a mere possibility that the harm will come to pass").

Additionally, the Prisoner Litigation Reform Act requires preliminary injunctive relief to

be "narrowly drawn [and] extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."18 U.S.C. § 3626(a)(2)). Requesting a transfer to another facility is unquestionably not the most narrowly tailored and least intrusive means to address any of Plaintiff's allegations in the instant motion. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (pursuant to the PLRA, injunctive relief must narrowly drawn, extend no further than necessary, and use the least intrusive means necessary).

For all these reasons, the Court **DENIES** Plaintiff's Motion of Emergency Circumstance. (Doc. 2).

## Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Although it is generally appropriate to wait for a defendant to raise an affirmative defense, the Seventh Circuit has noted that "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). A plaintiff can plead himself out of court, and if he includes allegations "that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (citations omitted). A plaintiff need not anticipate or overcome an affirmative defense

like exhaustion, but if he alleges facts sufficient to establish that an affirmative defense applies, "the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

In the Complaint, Plaintiff claims that he was assaulted on August 27, 2026. (Doc. 1, p. 11). The Complaint is signed September 24, 2026, and postmarked September 25, 2026. (*Id.* at p. 30, 61). Given that there are only twenty-nine days between the date of the alleged incident and when Plaintiff submitted his Complaint, the Court finds it highly unlikely that Plaintiff has utilized all three steps of the grievance process and exhausted his Eighth Amendment claims concerning the use of excessive force prior to initiating this lawsuit. *See* 20 ILL. ADMIN. CODE 504.830(e) (once a grievance reaches second level review, a grievance officer may take two months or longer to review a grievance). Therefore, before allowing Plaintiff to proceed any further with this litigation, he must **SHOW CAUSE** why Counts 1 and 2 should not be dismissed for failure to exhaust his administrative remedies.[3]

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against McKinstry. **COUNT 2** shall proceed against McKinstry, John Doe 1, John Doe 2, John Doe 3, and John Doe 4. **COUNTS 3** and **4** are **DISMISSED without prejudice**. Because there are no surviving claims against Cooley, John Doe 5, John Doe 6, Bruns, Little, John Doe 7 (Unknown Justice Committee Member), Barwick, Illinois Department of Corrections, Pinckneyville Correctional Center, and Corizon Horizon, the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

[3] Currently, Counts 1 and 2 are the only surviving claims. Therefore, a dismissal of Counts 1 and 2 would mean a dismissal of this entire care.

Before the Court will order service on Defendants McKinstry and John Does 1-4, Plaintiff is **ORDERED** to show cause in writing as to why this case should not be dismissed for failure to exhaust his administrative remedies prior to initiating this lawsuit. Plaintiff shall respond to this Order no later than **November 16, 2026**. Plaintiff is **WARNED** the failure to respond to this Order may result in dismissal of this action **WITH PREJUDICE.**

The Motion for Emergency Circumstance is **DENIED**. (Doc. 2).

Plaintiff further is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 16, 2026**



**STEPHEN P. MCGLYNN**
**United States District Judge**